ESTATE OF FREDERICK WIESE, DECEASED.

[No. 14,165; decided April 14, 1894.]

Inheritance Tax.—Property Passing by will or by the intestate laws is subject to the inheritance tax on its market value, and this tax, it would seem, should be assessed on the estate of a decedent after the deduction of costs of administration and debts.

J. S. Henderson, for the executrix.

J. A. Hosmer, assistant district attorney, for the state.

Elliott McAllister, appointee of court.

COFFEY, J. The following memorandum, submitted by Mr. McAllister, is adopted as the opinion of the court:

Question on construction of "An act to establish a tax on collateral inheritances, bequests and devises, to provide for its collection and to direct the disposition of the proceeds" (Statutes of 1893, page 193), as to whether the tax is to be assessed before or after the deduction of debts of the estate and expenses of administration, where such deduction must be made from property devised or bequeathed to collateral heirs, and, therefore, subject to the provisions of said law.

The question above formulated arises in the matter of the Estate of Frederick Wiese, deceased. Under the will of decedent all of the property over which decedent had the power of testamentary disposition—namely, one-half of the property of the estate, which was all community—was devised and bequeathed to persons not exempt under the statute.

The estate is ready for distribution, and the question now arises: On what basis shall the tax be computed—on the value of the property without deducting the cost of administration and the debts of the estate, or on the value of the property after making such deductions?

The statute does not seem to furnish a definite statement in reply; and so we must consider those portions of the statute that manifest the intention of the legislature in this respect.

Section 1 (Statutes of 1893, page 193) provides: ". . . . all property which shall pass by will or by the intestate laws of

this state . . . . to any person . . . . shall be and is subject to a tax of five dollars on every hundred dollars of the market value of such property.''

And section 9 (page 195) provides: ''Whenever any debts shall be proven against the estate of a decedent after the payment of legacies or distribution of property from which the said tax has been deducted or upon which it has been paid, and a refund is made by the legatee, devisee, heir or next of kin, a proportion of the tax so deducted or paid shall be repaid to him by the executor, administrator or trustee, if the said tax has not been paid to the county treasurer or to the state controller, or by them if it has been so paid.''

The ''passing'' of the property contemplated under section 1 seems to be an unconditioned and completed transfer of the property. Bouvier's Law Dictionary defines ''to pass'' as ''to become transferred''; and ''transfer'' as ''the act by which the owner of a thing delivers it to another person, with the intent of passing the rights which he has in it to the latter.'' The rights of an owner include that of possession as well as of title. The rights of ownership of a decedent's estate are acquired by those entitled thereto by submission of the property to the jurisdiction of the probate court, in accordance with the provisions of the laws of California. And what this ''passing'' of property is and by what method consummated must be sought for in the codes.

The Civil Code, by section 1363, provides that the title of specific devises and bequests shall pass by the will; that the possession shall not so pass, but shall be obtained from the personal representative, who may sell such specific devises and bequests for certain purposes.

The same code, by sections 1384 and 1386, provides similar regulations for the passing of property under the intestate laws of this state.

In other words, the ''passing'' of all property, whether by will or by the intestate laws, is conditional, is subject to the debts of the decedent and to the purposes of administration. Such purposes are found in section 1516 of the Code of Civil Procedure, which provides: ''All the property of a decedent shall be chargeable with the payment of the debts of the deceased, the expenses of administration, and the allowance to

the family, except as otherwise provided in this code and in the Civil Code; and the said property, personal and real, may be sold as the court may direct, in the manner prescribed in this chapter. There shall be no priority as between personal and real property for the above purposes.''

The only priority is allowed when it is necessary to carry out the intention of the decedent, when he has made specific devises and there is insufficient property for the debts. Such order of resort to property is provided for in section 1359 of the Civil Code.

From all of the above it appears that whether any of decedent's property ever reaches the heirs or legatees is dependent on the possession of the personal representative and on the amount of the debts and costs of administration; and that the passing is not completed until the possession be surrendered by the personal representative to the legatee or heir.

It would seem, therefore, that the tax in question is to be assessed on the estate after deduction of costs of administration and debts.

This view is confirmed by the fact that the legislature has provided (section 9, above quoted) for a repayment to the legatee of a proportion of the tax paid, when the legatee, as sometimes may happen, after receiving the property, is compelled to refund a portion thereof to meet debts of the estate.

The same conclusions have been reached in Pennsylvania and New York, in which states the statutes on this subject are similar.

In Orcutt's Appeal, 97 Pa. 185, the court held: ''The tax does not attach to the very article of property of which deceased died possessed. It is imposed only on what remains for distribution after expenses of administration, debts and rightful claims of third parties are paid or provided for. It is on net succession to the beneficiaries, and not on the securities in which the estate of decedent was invested. How, then, is it possible to impose a tax on this fund when it has never been judicially ascertained how much or. whether any of it will go to collateral legatees?''

In Commonwealth's Appeal, 34 Pa. 204, the court allowed the amount of a sum paid to the widow in compromise by collateral legatees from their legacy to be deducted before the

tax was assessed, and in so doing held: "It [the sum deducted] did not, therefore, pass to the legatees and devisees under the will, and was therefore not paid out of an estate so passing."

In Strode v. Commonwealth, 52 Pa. 181, the court cites with approval the nisi prius opinions: "It is the clear value of the estate passing to collateral heirs we are to look to, and that cannot be ascertained until after the debts are paid. The clear value for distribution must be exhibited by the executors in their settlement, and from that the state is to take its share, and we cannot inquire into the source from which that balance is made up"; and at page 189: "The law takes every decedent's estate into custody, and administers it for the benefit of creditors, legatees, devisees and heirs, and delivers the residue that remains, after discharging all obligations, to the distributees entitled to receive it. . . . . And it is not until this work of administration is performed that the right of succession attaches. . . . . The act operates on the residue of the estate after paying debts, and, theoretically, that residue is always a balance in money. The administration account always exhibits a balance in cash, not in specific goods, whether bonds or horses; and, though an heir may take bonds or horses as cash, the account must show, and always does show, a cash balance. That is the fund taxed by this law, and not the bonds or other chattels which may have produced the fund."

Mr. Dos Passos, in his work on this subject, summarizes the New York law in saying at page 112: "From the authorities, and on principle, it would appear that the tax can only fairly be imposed upon the net surplus passing to collaterals after all just debts and liabilities are deducted or paid."

The term "market value," used in our statute, should create no confusion. The New York statute of 1885 used the terms "fair market value" and "cash value," as did also the statute of 1887 of that state; these terms have been held to mean the same thing: Matter of Astor, 6 Dem. 402, 410.

The Pennsylvania statute uses the term "clear value," which might be somewhat more apt, if it be at all necessary to be more express. But the question turns on the time of the

"passing," for that is the time when the value, be it "clear," "market" or "cash," is to be computed; and on the amount of property so passing is the market value to be reckoned and the tax to be assessed.